UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| EARLENE PEMBERTON, INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER, A.M. | CIVIL ACTION NO. 09-30 |
| VERSUS | JUDGE TRIMBLE |
| WEST FELICIANA PARISH SCHOOL BOARD, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant West Feliciana Parish School Board ("School Board") on behalf of defendant Superintendent Jesse L. Perkins, Jr., wherein defendant seeks summary judgment as to the remaining claims against it by plaintiff in the above-captioned suit.[1] For the reasons expressed below, the court finds that genuine issues of fact persist which, if decided in plaintiff's favor, would enable a jury to find in favor of plaintiff in this matter. Accordingly, the court finds that summary judgment should be GRANTED in part and DENIED in part.

I. RELEVANT FACTS

This suit arises out of allegations of sexual assault made by a female minor child, A.M., against three male minor children ("Perpetrators"). The suit is brought by A.M.'s mother, Earlene Pemberton ("Plaintiff") on behalf of her minor child.

Plaintiff alleges that A.M. was sexually assaulted on the campus of West Feliciana Middle School ("WFMS") by three male students. Plaintiff alleges that A.M. was on campus at

---

[1] R. 41.

about 4:30 p.m., having finished basketball practice, and waiting for her Grandmother to pick her up, when she was attacked by three male students, who held her down while they fondled her breasts and private areas. Plaintiff alleges that she filed a written report with Mr. Darryl Powell ("Principal Powell"), the Principal of WFMS.[2]

Plaintiff filed suit against Principal Powell, the School Board, Lloyd Lindsey and West Feliciana Parish Superintendent of Schools Jesse L. Perkins, Jr. on January 16, 2009. Plaintiff's complaint alleges violation of A.M.'s rights and states claims under Title IX (20 U.S.C. § 1681, et seq.), the First and Fourteenth Amendments to the Constitution of the United States of America, through 42 U.S.C. § 1983 and Louisiana Civ. C. Art. 2315.[3] Plaintiff bases these claims upon assertions that, following her report of the alleged attack, defendants took minimal action to punish the Perpetrators, which resulted in further harassment by "fellow students."[4] Plaintiff asserts that, when A.M. reported the continuing harassment and A.M.'s discomfort with the fact that one of the Perpetrators was enrolled in one of the same classes as A.M., the school's only response was to offer A.M. the opportunity to switch to another class. Plaintiff's attorney contacted WFMS by letter on February 22, 2008 to ask that certain actions be taken to protect A.M. from future harassment, including the expulsion of the Perpetrators.[5] Plaintiff asserts that, despite these repeated notifications to defendants that A.M. was being harassed, no appropriate punishment was imposed upon the Perpetrators.

Plaintiff's suit prays for damages, including punitive damages, as well as attorney's fees, expenses and legal interest thereon. This suit was initially assigned to the late Chief Judge Ralph Tyson and, thereafter, reassigned to the undersigned judge. Prior to our receipt of the case, Chief

---

[2] R. 26 at ¶ 5.
[3] R. 1, 26.
[4] R. 26 at ¶ 6(a).
[5] R. 41-15.

Judge Tyson dismissed plaintiff's Title IX claim against Principal Powell in his individual capacity, all § 1983 claims against the School Board and Principal Powell, including all claims for punitive damages; and plaintiff's state law claim for intentional infliction of emotional distress under La. Civ. C. Art. 2315 against the School Board and Principal Powell.[6] That ruling also ordered plaintiff to amend her complaint in order to allege facts sufficient to maintain claims under § 1983 for retaliation against the School Board and Principal Powell in his individual capacity; a § 1983 claim for punitive damages against Principal Powell in his individual capacity; and any Louisiana law claim for intentional infliction of emotional distress claim against the School Board and Principal Powell and also instructed that defendants may seek dismissal under Fed. R. Civ. P. 12(b)(6) after any amendment is made.[7]

Thereafter, defendants filed a motion for partial dismissal of plaintiff's supplemental and amending complaint, which was granted on the bases of plaintiff's failure to oppose the motion and on the merits of defendants' arguments in favor of dismissal.[8] As a result of this case's procedural history, the only remaining claims by plaintiff are those of deliberate indifference and retaliation under Title IX, brought against the School Board.[9] The School Board's instant motion seeks summary judgment as to these two remaining claims.

## II. APPLICABLE STANDARD

Fed. R. Civ. P. 56, as recently amended, provides that

> [a] party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought. The court shall

---

[6] R. 25.
[7] Id.
[8] R. 31, 32.
[9] Plaintiff's suit originally named Superintendent Lloyd Lindsey as a defendant. Superintendent Lindsey died in April of 2009. Plaintiff substituted his successor, Superintendent Jesse L. Perkins, Jr. in his official capacity. As observed by defendants, plaintiff's purported claims against Superintendent Perkins in his official capacity are duplicitous, given that claims against an official in his official capacity are, in reality, claims against the agency the official represents.

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]

When faced with a motion for summary judgment, a non-moving party may not rest on the allegations of the pleadings.[3] Once the moving party meets its initial burden of proof by demonstrating the absence of a genuine dispute as to any material fact for trial, the nonmoving party must designate specific facts showing that one or more triable issues remain, which, if decided in the non-moving party's favor, would entitle him to relief under the law.[4] If the nonmoving party fails to satisfy this burden, the court must enter summary judgment in favor of the movant if the record before it demonstrates that the movant is entitled to judgment as a matter of law. If the nonmoving party is unable, for reasons specified by affidavit or declaration, to present facts necessary to justify its opposition to the motion, the court may defer ruling on the motion, deny the motion, grant additional time for the taking of discovery or issue any other appropriate order.[5]

In considering a motion for summary judgment, the court will view the evidence before it in the light most favorable to the nonmoving party, but will not infer proof of facts not properly alleged and supported.[6] Evidence presented in support of or in opposition to a motion for

---

[2] Fed. R. Civ. P. 56(a).

[3] Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

[4] Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990); Matsushida, 475 U.S. at 586; Celotex, 477 U.S. at 323; Little, 37 F.3d at 1975.

[5] Fed. R. Civ. P. 56(d).

[6] Wallace v. Texas Tech University, 80 F.3d 1042 (5th Cir. 1996).

summary judgment must be of the sort that would admissible in evidence at the trial of the matter.[7]

### III. ANALYSIS

Title IX provides, in part, that

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance[.][10]

The seminal case on Title IX school board liability for student-on-student harassment is Davis ex rel. LaShonda D. v. Monroe County Board of Education,[11] decided by the United States Supreme Court in 1999. In Davis, the Court recognized a private right of action under Title IX for gender-based harassment. The Court and the United States Fifth Circuit Court of Appeals interpret the language of Title IX to require that plaintiffs alleging liability for student harassment by other students must demonstrate that

1. the harassment was known to school officials;

2. the harassment took place during school hours or in a setting where the officials could exercise control over students;

3. the officials acted with "deliberate indifference" in their response to the known harassment;

4. the harassment was so severe, pervasive and objectively offensive that it deprived the victim of educational benefits or opportunities; and

5. the harassment was based on the victim's sex.[12]

---

[7] Fed. R. Civ. P. 56(c)(2).

[10] 20 U.S.C. § 1681(a).
[11] 526 U.S. 629 (1999).
[12] Sanches v. Carrollton-Farmers Branch Indep. School Dist., 647 F.3d 156, 165 (5th Cir. 2011) citing Davis at 650.

5
Case 3:09-cv-00030-JTT -JDK   Document 62   02/10/12   Page 5 of 15

The School Board does not dispute that it is a federal funds recipient, that school officials were aware of the harassment or that the harassment took place at a time and place where officials could exercise control over students for purposes of this motion.[13] The School Board, thus, bases its motion on the elements of deliberate indifference and the character of the harassment as being "severe, pervasive, and objectively offensive."[14]

The Court in Davis instructed that, while a private right of action may lie in student-on-student harassment cases, liability may not be imposed upon a school board for the actions of the student perpetrator(s), but, instead, must be based upon the actions of the school board in response to reported harassment. The Court further explained that

> funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.[15]

The court's review of plaintiff's complaint reveals two separate allegations of harassment.[16] The first, a physical altercation on January 17, 2008 and, the second, a period of unspecified harassment by fellow students following A.M.'s report of the January 17, 2008 incident and continuing perhaps until her March 7, 2008 dismissal from school, to be discussed below.

The steps taken to investigate the January 17, 2008 incident and to punish those deemed guilty of wrongdoing are well-established in the record. Following A.M.'s allegation of harassment to school officials on January 18, 2008, WFMS initiated an investigation, which

---

[13] R. 41-1 at p. 13.
[14] Id.
[15] Davis, 526 U.S. at 648.
[16] While the complaint is vague, the court construes it as alleging that the second period of harassment included comments from students other than just A.M.'s alleged harassers during the January 17, 2008 incident. On this basis, we construe an allegation of two instances of harassment.
6

resulted in the imposition of four-day, out-of-school suspensions on each of the boys named by A.M. as her attackers.[17] Thereafter, two of the boys whom the school deemed particularly responsible in the incident were given an additional punishment of fourteen-day, in-school suspension.[18] The third boy was given an additional two-day, in-school suspension, based on the school's finding that he had no physical contact with A.M. during the incident.[19]

Plaintiff characterizes these measures as inadequate under the circumstances of the alleged harassment. Our review of Davis, in which the issue of the adequacy of remedial measures is addressed, leads this court to conclude that plaintiff's subjective opinion does not amount to proof of deliberate indifference. Rather, we must ask whether or not, in light of the allegations as they were known to school officials at the time, the response offered by the school board is "objectively unreasonable."

Taking plaintiff's version of the January 17, 2008 incident as true for purposes of this motion, we are unable to find that the school's response would support a finding of deliberate indifference as that term is defined by applicable jurisprudence. The Davis Court was adamant that Title IX does not impose a duty upon school officials to absolutely prevent student-on-student harassment and that the school's response to allegations of harassment should not be deemed deliberately indifferent solely on the basis that that it failed to cure such harassment.[20] The Court expressly denied the theory that plaintiffs asserting a private right of action may demand particular punishments for alleged perpetrators which, if not indulged, constitute deliberate indifference.[21]

---

[17] R. 41 at p. 5 and Exhibits referenced therein.
[18] R. 41 at p. 7 and exhibits referenced therein.
[19] Id.
[20] Davis, 526 at 648.
[21] Id.

Moreover, evidence before the court indicates that there were conflicting accounts of the events in question. One boy's account denies that anyone touched A.M. in her private areas, including her breasts.[22] Several accounts given by other students reported that A.M. told them that the incident was in the nature of horseplay and that, while she did not feel like charges should be pressed, her Grandmother was forcing her to do so.[23]

Given these conflicting accounts and that WFMS conducted an investigation of A.M.'s allegations and imposed punishments of both in-school and out-of-school suspensions, this court finds that defendant's response does not demonstrate deliberate indifference as a matter of law.

Although we need not address the element of severity, pervasiveness and objective offensiveness, we note that the Davis court cautioned against the general application of Title IX to single occurrences, stating that

> [a]lthough, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment. By limiting private damages actions to cases having a systemic effect on educational programs or activities, we reconcile the general principal that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to ignore.[24]

We reach the same conclusion with respect to the alleged harassment which occurred between A.M.'s report of the January 17, 2008 incident and her eventual departure from WFMS in March of that year. As to this second claim of harassment, plaintiff's complaint states:

---

[22] R. 41-12.
[23] R. 41-10, -11.
[24] Davis, 526 U.S. at 652-53.

> [i]mmediately after reporting the attack, A.M. was subjected to abuse and harassment by fellow students. Once the perpetrators were allowed to return to class, the harassment by the perpetrators and their friends intensified. Specifically, A.M. was subjected to insults and threats of physical harm by the friends of the perpetrators and harassed by the perpetrators. When A.M. complained to school officials about these actions, the officials, including Powell, ignored her. At one point, she requested that the perpetrators be removed from her classes. Rather than take steps to protect A.M. from this harassment, she was informed by Powell that, if she did not like the fact that the boys were in class with her, she could switch classes.[25]

Plaintiff's allegation, therein, is that the school's response to A.M.'s complaints of "insults and threats of physical harm" was objectively unreasonable under the circumstances. The court disagrees. In Sanches v. Carrollton-Farmers Branch Independent School System,[26] the Fifth Circuit considered a school's response to allegations of verbal harassment and found that the school's transfer of the alleged harasser out of one of the complainant's class was not an objectively unreasonable response, even when the harasser and complainant were still enrolled in the same cheerleading class.[27] The court found the school's actions reasonable and in keeping with the school's stated goal of minimizing interactions between the complainant and her alleged harasser.[28]

While plaintiff's complaint alleges that more should have been done to protect A.M. from harassment, we must take cases like these in the context of reality. Plaintiff's complaint does not specify how many students harassed her or specify the nature of the comments made to A.M. Assuming that plaintiff's complaint is true for these purposes, we must conclude that at least several students made comments or threats to plaintiff. Assuming that the school had expelled each of the students whom A.M. identified a harasser, this court has no basis to further assume

---

[25] R. 26 at ¶6(a).
[26] 647 F.3d 156 (5th Cir. 2011).
[27] Id. at 168.
[28] Id. at 168.

that such action would cure the harassment. Recalling Davis, Title IX does not demand a "fix," but only a reasonable response under the circumstances. Our review of plaintiff's allegations reveals no basis for a finding of objectively unreasonable response by the defendant in this case.[29]

Given our findings above, the court concludes that plaintiff's Title IX deliberate indifference claim should be denied and dismissed with prejudice.

We now turn to plaintiff's Title IX retaliation claim. Plaintiff's suit alleges that the defendant launched an investigation into her residency and eventually removed her from the rolls of the school in retaliation for A.M.'s assertion of Title IX claims against the defendant.[30]

Evidence before the court shows that the School Board, by and through its then-Superintendent Lloyd Lindsey, sent a letter to A.M.'s Grandmother on March 10, 2008, stating that A.M. had been dropped from the rolls at WFMS because

> [i]t has been determined through an extensive investigation by the school system and law enforcement, that you are not a legal resident of West Feliciana Parish, and do not reside at the address that you provided to school officials.[31]

Plaintiff's complaint specifically denies this allegation.[32] The School Board asserts that the investigation at issue was conducted by Jesse Perkins ("Perkins"), the Supervisor of Child Attendance & Welfare, who became Interim Superintendent after Lloyd Lindsey died.[33]

The School Board offers the affidavit of Perkins, which states that the school district has an "After School Policy," which prohibits students from remaining on campus longer than fifteen

---

[29] While we need not address the severity, pervasiveness or objective offensiveness of the alleged harassment, we note that plaintiff's complaint is vague and conclusory as to the comments and/or threats made, offering no specific factual allegations which would support a favorable finding as to this element.
[30] R. 26 at ¶ 6(d), (e).
[31] R. 41-18.
[32] R. 26 at ¶ 6(e).
[33] R. 41-1 at p. 8.

(15) minutes after the final school bell rings, unless they are involved in an after school program or activity. Perkins attests that he "was informed that A.M. routinely stayed late after school, longer than the 15 minutes provided by policy, waiting to be picked up by her grandmother. She was not participating in an after school program or activity."[34] Perkins further attests that, when it is known that a child routinely remains on campus after the allotted fifteen minutes, it raises the question as to whether or not the child lives within the district, which is a requirement of attendance at district schools, including WFMS.[35]

Perkins' affidavit states that he learned from A.M.'s school record that the address given by A.M.'s Grandmother on her registration form is located in Webb Trailer Park, which is located within West Feliciana Parish and, therefore, within the appropriate school district.[36] Perkins' affidavit notes that school bus service is provided to Webb Trailer Park, because it is within the district, but that A.M. was driven to school each day by a relative who is known to reside in Mississippi, outside the school district.[37] Perkins attests that he personally visited Webb Trailer Park and spoke to both the owner of the park and her daughter, who both confirmed that neither A.M., nor her Grandmother lived there and that A.M.'s Grandmother owned a home and lived in Wilkinson County, Mississippi.[38] Perkins' affidavit states that, based on this information, he concluded that A.M. was not a resident of the West Feliciana Parish school district and, therefore, was ineligible to attend WFMS.[39]

Title IX encompasses a private right of action against a school board for retaliation based on a person's assertion or attempted assertion of a Title IX right.[40] A plaintiff alleging Title IX

---

[34] Id. at ¶ 7.
[35] Id. at ¶¶ 9-10.
[36] Id. at ¶ 11.
[37] Id. at ¶¶ 12-13.
[38] Id. at ¶¶ 14-16.
[39] Id. at ¶ 17.
[40] Jackson v. Birmingham Bd. of Education, 544 U.S. 167 (2005).

retaliation must demonstrate that the defendant took an adverse action against her because she asserted a right under Title IX.[41] Retaliation claims under Title IX are analyzed using the same burden-shifting framework applicable to Title VII retaliation claims.[42] Once the plaintiff makes a prima facie showing of retaliation, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for its adverse action against plaintiff. Thereafter, the burden shifts to plaintiff to come forward with evidence that the defendant's stated non-retaliatory reason is merely pretext for an impermissible motive, here, retaliation for plaintiff's complaints under Title IX.[43]

In the instant case, the evidence demonstrates that plaintiff, through her then-counsel, asserted a violation of Title IX by letter dated February 22, 2008.[44] Plaintiff's counsel's letter advised defendant of A.M.'s allegations of harassment on both January 17, 2008 and the more recent harassment by fellow students and her alleged former attackers in the intervening weeks.[45] Viewing this evidence in the light most favorable to plaintiff as the non-moving party, we construe it as an assertion of Title IX rights for purposes of this motion. Chronologically, A.M.'s dismissal from the rolls of WFMS occurred after both the January 17, 2008 incident and the aforementioned letter to defendant from her attorney. Plaintiff describes Perkins' affidavit as asserting that Perkins "independently and without the knowledge of anyone at either WFSB or West Feliciana Middle School initiated an investigation into the residency of A.M.," and, while informed of the January 17, 2008 incident, knew nothing of claims of sexual harassment by A.M. Plaintiff asserts that, under these facts, plaintiff has sufficiently alleged a prima facie case of retaliation. The court agrees.

---

[41] Id.; Sanches, 647 F.3d at 170.
[42] Carder v. Continental Airlines, Inc., 636 F.3d 172, 181 (5th Cir. 2011) internal citations omitted; Lowrey v. Texas A&M University System, 117 F.3d 242, 249 (5th Cir. 1997).
[43] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Rutherford v. Harris County, 197 F.3d 173 (5th Cir. 1999).
[44] R. 41-15.
[45] Id.

The evidence before the court demonstrates that plaintiff made a complaint within the spectrum of conduct prohibited by Title IX and that, thereafter plaintiff was dropped from the rolls of the school, which clearly constitutes an adverse action. While the evidence of a causal connection between plaintiff's Title IX allegations and her dismissal from school is circumstantial and based largely on temporal proximity, it would, if deemed credible by the jury, form a reasonable basis for a finding of pretext, thereby shifting the burden to defendant to rebut the presumption.

Assuming that plaintiff demonstrates such prima facie case for the purposes of this motion, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for A.M.'s permanent dismissal from WFMS. The School Board points to Perkins' affidavit, wherein he cites the district's residency policy and discloses that, when it is known that a student is on campus after the permissible fifteen (15) minute grace period, it leads officials to question the child's residency. Thus, argues the School Board, A.M.'s dismissal was based on the legitimate enforcement of its residency policy after an investigation led Perkins to conclude A.M. did not meet the residency requirement. The court finds that this is a legitimate, non-retaliatory reason for the adverse action at issue, which acts to shift the burden, again, to plaintiff to come forward with evidence of pretext.

We find that plaintiff successfully offers ample proof of pretext, which, if believed by a jury, would enable a finding of pretext and, therefore, the ultimate finding of retaliation in this case. Not only does Perkins' affidavit admit that he was informed of the January 17, 2008 incident, but it expresses reliance on a policy of investigating student residency which may not have been equally applied in this case. Plaintiff's complaint alleges that she remained on campus

on January 17, 2008 after finishing a club basketball practice.[46] The parties agree that plaintiff was not alone on campus at that time, however, defendant does not allege that any of the other students were subjected to residency investigations. Moreover, Perkins does not disclose who informed him of A.M.'s habit of remaining on campus late in the day. Given these discrepancies, a reasonable jury may be convinced that Perkins' affidavit is inaccurate, which would enable the establishment of a prima facie case of retaliation.

Again, we find that these factual allegations, if believed by the jury, would support a finding in favor of plaintiff as to her Title IX retaliation claim. For that reason, we find summary judgment should be denied on this claim.

Plaintiff's memorandum in opposition to this motion raises a discovery issue which we deem important. Specifically, plaintiff alleges that defendant has not supplied answers to discovery requests concerning other students who may have been investigated for residency violations.[47] Although plaintiff asserts that she is unable to respond properly to defendant's arguments because this discovery has not been produced, plaintiff does not seek a stay of the motion pursuant to Fed. R. Civ. P. 56(d), though such relief is clearly contemplated by the rule. As noted by defendant, this case was filed in 2009 and plaintiff has had ample time to request and, if necessary, compel discovery from defendant.

## IV. CONCLUSION

Based on the law and evidence presented by the parties, this court finds that plaintiff's claim for Title IX deliberate indifference fails as a matter of law because the allegations of plaintiff, when taken as true do not support a finding by a reasonable jury that the school board's

---

[46] Perkins' affidavit denies that A.M. was on campus because of a sanctioned event or practice. This, too, is a fact issue which must be left to the jury.
[47] R. 49 at pp. 8-9.

response to her allegations of harassment was "objectively unreasonable" in light of the known facts. Such claim will be dismissed with prejudice. The court finds, however, that plaintiff has successfully demonstrated the existence of genuine issues of material fact concerning whether or not her dismissal from WFMS was the result of retaliation based on her complaints of harassment. Accordingly, summary judgment will be denied as to plaintiff's retaliation claim.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
February 10, 2012

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE